IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL A. SCHRINER,** | : | **CIVIL NO. 1:CV-03-2122** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **SYSCO FOOD SERVICE OF** | : | |
| **CENTRAL PENNSYLVANIA,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM

Before the court is Defendant's motion for summary judgment.  (Doc. 16.)  The parties have briefed the issues, and the matter is ripe for disposition.  For the reasons stated below, the court will grant Defendant's motion.

I.        **Background**

A.        **Procedure**

Plaintiff filed his Complaint on November 24, 2003, alleging violations by Defendant, Sysco Food Service of Central Pennsylvania ("Sysco") of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101; the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 951; and the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601.  Defendant filed the instant motion for summary judgment on November 15, 2004.

On February 15, 2005, the court heard oral arguments on Defendant's motion for summary judgment.  Per its February 15, 2005 order, the court directed Plaintiff to file a brief supporting his claim for economic damages.  Plaintiff filed his brief on March 7, 2005.  (Doc. 31.)  Defendant filed a response on March 18, 2005.

(Doc. 33.)  On April 1, 2005, Plaintiff filed his reply to Defendant's response.  (Doc. 37.)

### B.   Facts

Plaintiff was employed by Defendant in the capacity of Marketing Associate (outside salesperson) from February 1994 until his August 6, 2002 termination.[1]  (Pl.'s Counterstatement of Mat. Facts ¶ 5.)  Plaintiff was a non-unionized at-will employee.  (Def.'s Statement of Mat. Facts ¶ 62.)  The events giving rise to the instant action occurred after two of Plaintiff's minor children were abused by another child.  (*Id*. ¶ 7.)  After this incident, Plaintiff had difficulty concentrating on his work.[2]  (Def.'s Statement of Mat. Facts ¶ 8.)  Plaintiff relayed his difficulty concentrating to his supervisor.  ( *Id*. ¶ 32.)

In January 2002, Defendant's Human Resource Manager discussed the possibility of FMLA leave with Plaintiff and his wife.  ( *Id*. ¶ 37.)  At some point prior to taking FMLA leave, Plaintiff began to meet with a Licensed Social Worker ("LSW").  Plaintiff or his LSW completed Plaintiff's application for

---

[1]The court notes that Defendant asserts that Plaintiff was employed by Defendant from October 1997 until August 6, 2002. (Def.'s Statement of Mat. Facts ¶ 4.)  The court finds this disagreement over the dates of employment to be immaterial and will not consider it further.

[2]Defendant asserts that Plaintiff discussed the abuse of children with customers and that it documented complaints from customers regarding the discussions.  (Def.'s Statement of Mat. Facts ¶¶ 9, 10.)  Plaintiff counters that if he did engage in any conversation with customers it was at the initiation of the customers.  (Pl.'s Counterstatement of Mat. Facts ¶ 9.)  Additionally, Plaintiff asserts that the use of the documented complaints from customers has not been authenticated by either the scrivener or the individuals who allegedly made the complaints.  (*Id*. at 10.)  Thus, Plaintiff asserts any use of the documented complaints would constitute double hearsay.  (*Id*.)  The court finds Plaintiff's argument convincing, and will not consider Defendant's use of the documented complaints.  *See* Federal Rule of Civil Procedure 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence and shall show affirmatively that the affiant is competent to testify to the matters stated therein.").

FMLA leave.  ( *Id*. ¶ 40; Pl.'s Counterstatement of Mat. Facts ¶ 40.)  In early February 2002, Defendant approved a period of FMLA leave.[3]  (Def.'s Statement of Mat. Facts ¶ 41; Pl.'s Counterstatement of Mat. Facts ¶41.)

Sometime after beginning his FMLA leave, Plaintiff discussed his desire to return to work with his LSW.  (Def.'s Statement of Mat. Facts ¶ 42.)  On or about April 1, 2002, Plaintiff's LSW provided Defendant with a written release, stating that Plaintiff was able to return to work, initially on a reduced schedule on April 1, 2002 and then to full duty on April 22, 2002.  (*Id*.)  Defendant's last contact from Plaintiff's LSW was dated April 7, 2002 and contained no additional restrictions on Plaintiff's activities or hours.  (*Id*. ¶ 48.)  Plaintiff made no additional requests for FMLA leave.  (*Id*. ¶ 46.)  Plaintiff returned to work on a reduced schedule on April 1, 2002.

On April 22, 2002, Defendant's agents met with Plaintiff and discussed written guidelines regarding his employment.  Specifically, these guidelines provided the hours and days of work for Plaintiff, amounting to a 40 hour work week, a guarantee of salary for Plaintiff for a time period from April 22, 2002 until July 12, 2002, and a directive to Plaintiff not to discuss his personal life with his customers.[4]  (*Id*. ¶ 58.)

---

[3]Defendant assert that FMLA was granted on or about February 5, 2002.  (Def.'s Statement of Mat. Facts ¶ 41.)  Plaintiff makes a point to deny Defendant's assertion, stating that his FMLA leave was granted on February 1, 2002.  (Pl.'s Counterstatement of Mat. Facts ¶ 41.) The court finds this discrepancy in time to be immaterial and will not consider it further.

[4]Plaintiff denies Defendant's statement and states that the document speaks for itself.  (Pl.'s Counterstatement of Mat. Facts ¶ 58.)  The court has examined the document and accepts Defendant's characterization of the document.  (Def.'s Statement of Mat. Facts, Ex. 5.)

Before taking FMLA leave, Plaintiff's sales territory was located in the Harrisburg area with at least one account in the Lancaster area (hereinafter referred to as Plaintiff's "Pre-FMLA Territory").  (*Id.* ¶ 67; Pl.'s Counterstatement of Mat. Facts ¶ 67.)  In late May or early June, Plaintiff was reassigned to a new sales territory.  (Pl.'s Counterstatement of Mat. Facts ¶ 70.)  Plaintiff's new sales area was located in the Lancaster area (hereinafter the "Lancaster Territory").  (*Id.*)  As part of Plaintiff's transfer to the Lancaster territory, Plaintiff maintained the High Foods account, which was his largest volume pre-FMLA account.  (Def.'s Statement of Mat. Facts ¶ 73.)  Most of the locations of the new accounts were between his home and the High Foods's location.  (*Id.*, Ex. 23.)

Plaintiff's immediate supervisor directed him to check his voice mail once per hour.  (*Id.* ¶ 84.)  Plaintiff requested that his supervisor contact him directly on his cell phone.  (Pl.'s Counterstatement of Mat. Facts ¶ 86.)  Plaintiff and Defendant dispute whether other sales representatives were required to check their voice mail on an hourly basis.  (Def.'s Statement of Mat. Facts ¶ 85; Pl.'s Counterstatement of Mat. Facts ¶ 85.)  It is undisputed that Plaintiff did not always check his voice mail on an hourly basis.  (Pl.'s Counterstatement of Mat. Facts ¶ 87.)

In early August 2002, Plaintiff's immediate supervisor sent out a voice mail to marketing associates requiring new marketing associates and those falling under a certain amount of sales to attend a training session.  (Def.'s Statement of Mat. Facts ¶ 88.)  Plaintiff was under the sales number specified and required to attend the training.  (*Id.* ¶ 89.)  Plaintiff contacted the regional vice president regarding the scheduled meeting.  (*Id.* ¶ 91.)  Plaintiff was told by the regional vice

president that he did not have to attend the meeting.  (*Id.*)  It is undisputed that
Plaintiff did not attend the meeting.  (*Id.* ¶ 93)

On August 6, 2002, Plaintiff's immediate supervisor left a voice mail for
Plaintiff directing him to attend a meeting.  (*Id.* ¶ 98.)  Plaintiff was terminated at this
meeting.  (*Id.* ¶ 99.)  The reasons for Plaintiff's termination are disputed by both
parties and will be subsequently addressed by the court in the discussion section of
this memorandum.

Plaintiff began work with US Foods approximately twenty days after his
termination.  (*Id.* ¶ 106; Pl.'s Counterstatement of Mat. Facts ¶ 106.)  Plaintiff
received a higher salary than he did with Defendant and the benefits were similar.
(Def.'s Statement of Mat. Facts ¶ 107; Pl.'s Counterstatement of Mat. Facts ¶ 107.)
Plaintiff made no requests for US Foods to accommodate his medical conditions.
(Def.'s Statement of Mat. Facts ¶ 108; Pl.'s Counterstatement of Mat. Facts ¶ 108.)
Plaintiff left US Foods in January 2003.  (Def.'s Statement of Mat. Facts ¶ 109.)

Plaintiff applied for Social Security Disability Benefit ("SSDI") in
February or March of 2003.  (Pl.'s Counterstatement of Mat. Facts ¶ 111.)  Plaintiff
was granted SSDI in June 2004, based on depression and toxic mold exposure.
(Def.'s Statement of Mat. Facts ¶ 113; Ex. 10.)  Plaintiff's SSDI benefits were
retroactive to February 2002.  (*Id.* ¶ 113.)

II.        **Legal Standard: Summary Judgment**

Summary judgment is proper when "the pleadings, depositions,
answers to interrogatories, and admissions on file, together with the affidavits, if any,
show that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *accord Saldana v. Kmart Corp.*, 260 F.3d 228, 231-32 (3d Cir. 2001).  A factual dispute is "material" if it might affect the outcome of the suit under the applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is "genuine" only if there is a sufficient evidentiary basis which would allow a reasonable fact-finder to return a verdict for the non-moving party.  *Id.* at 249.  The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party.  *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir. 1985); *see also Reeder v. Sybron Transition Corp.*, 142 F.R.D. 607, 609 (M.D. Pa. 1992).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  Instead, he must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, and designate specific facts showing that there is a genuine issue for trial." *Id.* (internal quotations omitted); *see also Saldana*, 260 F.3d at 232 (citations omitted).  Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden at trial." *Celotex*, 477 U.S. at 322-23.  "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.' " *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

**III.**        <u>**Discussion**</u>

Defendant asserts that summary judgment of Plaintiff's ADA claims is proper for the following reasons: (1) Plaintiff cannot meet his burden of establishing disability under the ADA; and (2) Plaintiff cannot establish that he sought any reasonable accommodation or requested an interactive exchange.  Defendant asserts that summary judgment of Plaintiff's PHRA claims is proper for the same reasons that summary judgment of Plaintiff's ADA claims is proper.[5]  Defendant asserts that summary judgment of Plaintiff's FMLA claims is proper for the following reasons: (1) Plaintiff cannot meet his prima facie burden under his FMLA claims; (2) Defendant satisfied the requirements of the FMLA; (3) Defendant did not interfere with, but rather facilitated Plaintiff's FMLA leave; (4) Defendant did not retaliate for Plaintiff's use of FMLA; (5) adverse action is lacking prior to Plaintiff's termination; (6) there is no nexus between Plaintiff's leave and his termination; and (7) Defendant did not discriminate against Plaintiff for his use of FMLA.  Finally, Defendant asserts that Plaintiff's ADA, PHRA and FMLA claims fail on an independent basis, a lack of damages.  The court finds Defendant's arguments to be well-founded.  Accordingly, the court will grant Defendant's motion for summary judgment.

**A.**      <u>**American with Disabilities Act**</u>

The ADA prohibits employers from discriminating against otherwise

---

[5]Generally, the disability provisions of the PHRA are interpreted in the same manner as the provisions of the ADA.  *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996).

qualified individuals with a disability.[6]  ADA claims are analyzed under the burden

shifting doctrine of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

*Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000).  To establish a *prima facie*

case of employment discrimination under the ADA, a plaintiff must be able to

establish that (1) he has a disability, (2) is a qualified individual, and (3) has suffered

an adverse employment action because of his disability.  *Deane v. Pocono Med.*

*Ctr.*, 142 F.3d 138, 142-43 (3d Cir. 1998).

Defendant argues that Plaintiff cannot establish that he had a disability

for purposes of the ADA, and therefore cannot meet the first tier of his *prima facie*

case.  Plaintiff can establish a disability if he has (1) a mental or physical

impairment that substantially limits a major life activity,[7] (2) a record of such an

impairment or (3) is regarded as having such an impairment.  42 U.S.C. § 12102(2).

Plaintiff does not argue that he was fired based on a record of physical

or mental impairment that substantially limits a major life activity, prong two of the

definition of disability.  Therefore, Defendant focuses on the first and third prongs of

---

[6]The ADA provides in relevant part:

> No covered entity shall discriminate against a qualified individual with
> a disability because of the disability of such individual in regard to job
> application procedures, the hiring, advancement, or discharge of
> employees, employee compensation, job training, and other terms,
> conditions, and privileges of employment.

42 U.S.C. § 12112(a).

[7]The ADA does not define "major life activity."  *Kelly*, 94 F.3d at 105.  The gap is filled in by
EEOC regulations.  *Id.*  EEOC regulations define major life activities as "functions such as caring for oneself,
performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."  29 C.F.R. §
1630.2(j).  "In relevant part, the regulations suggest considering '[t]he nature and severity of the impairment.' "
*Kelly*, 94 F.3d at 105 (quoting 29 C.F.R. § 1630.2(j)(2)(i)).

the definition of disability.  Additionally, Defendant does not dispute that Plaintiff had a disability prior to his FMLA leave or during his FMLA leave.  Instead, Defendant asserts that Plaintiff did not have a disability under the ADA between his post-FMLA return and his termination.

### i.      Substantially Limited a Major Life Activity

With respect to the first tier of the definition of disability, Defendant asserts that Plaintiff cannot show that he had a disability that substantially limited a major life activity.  In response, Plaintiff asserts that did have a disability that substantially limited him in a major life activity.  It is undisputed that Plaintiff was taking medication to offset the effects of his post-traumatic stress disorder ("PTSD") and major depression.  ( Schriner Dep. at 9.)  Plaintiff argues that "without regard to the medications [Plaintiff's] treating physician prescribed for [Plaintiff] to offset the effect of his PTSD and major depression . . . a fact finder could well determine that [Plaintiff's] impairment substantially limited many major life activities."  (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 5.)  Plaintiff does not argue that with medication he was substantially limited in a major life activity.  Instead, Plaintiff asserts that without these medications, many of his life's major activities such as interactions with others and work would be adversely effected.  *Id.*  Essentially, Plaintiff argues that his ADA disability should be evaluated in his "hypothetical uncorrected state."  *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 482 (1999).

In support of his position Plaintiff relies upon the EEOC interpretive guidelines of the ADA, which provide: "The existence of an impairment is to be determined without regard to mitigating measures such as medicines, or assisted or prosthetic devices."  29 C.F.R. §1630(h).  Additionally, Plaintiff cites to *Sherback v.*

*Wright Auto. Group*, 987 F. Supp. 433, (W.D. Pa. 1997) for the position that "[a]n individual who is taking medication for a mental impairment has an ADA disability if there is evidence that the mental impairment, when left untreated, substantially limits a major life activity." (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 5.)  The *Sherback* court stated that "an individual with epilepsy would be considered to have an impairment *even if the symptoms of the disorder were completely controlled by medicine.* Similarly, an individual with hearing loss would be considered to have an impairment even if the condition were correctable through the use of a hearing aid." *Id.* at 437.  While Plaintiff's understanding of *Sherback* is correct, Plaintiff's argument is incorrect.   Two years after *Sherback*, the Supreme Court addressed the same issue in *Sutton*, 527 U.S. 471.  In *Sutton* the Court stated that

> [T]he approach adopted by the agency guidelines--that persons are to be evaluated in their hypothetical uncorrected state--is an impermissible interpretation of the ADA. Looking at the Act as a whole, it is apparent that if a person is taking measures to correct for, or mitigate, a physical or mental impairment, the effects of those measures--both positive and negative--must be taken into account when judging whether that person is "substantially limited" in a major life activity and thus "disabled" under the Act.

*Id*. at 482.  Moreover, *Sutton* provided:

> A "disability" exists only where an impairment "substantially limits" a major life activity, not where it "might," "could," or "would" be substantially limiting if mitigating measures were not taken. A person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently "substantially limits" a major life activity.

*Id.* at 482-83; *see also Taylor* 184 F. 3d at 302 ("[W]hether a plaintiff has a disability under 42 U.S.C. § 120102(2)(A) must be evaluated taking into account any mitigating

measures the plaintiff uses."). Thus, the use of corrective measures does not disqualify a person for coverage under the ADA. *Sutton*, 527 U.S. at 488. However, it is evident that such corrective measures must be considered.

The Supreme Court has expressly clarified that an ADA disability "requires a 'significant restrict[ion]' in an individual's manner of performing a major life activity." *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 565 (1999). In *Abertson's*, a former employee with monocular vision who was fired, brought suit under the ADA after he failed to meet the Department of Transportation's ("DOT") required vision standards and was not rehired after he was granted a waiver by the DOT. The Ninth Circuit found that the *Abertson's* plaintiff established that the manner in which he saw was different from the manner in which most people see. *Id* at 561. That difference, according to the Ninth Circuit, was enough to establish disability. *Id*. The Supreme Court found that the Ninth Circuit was "too quick to find a disability." *Id*. at 565. The Court reasoned that "[b]y transforming 'significant restriction' into 'difference,' the court undercut the fundamental statutory requirement that only impairments causing 'substantial limitat[ions]' in individuals' ability to perform major life activities constitute disabilities." *Id*. Thus, Plaintiff must show more than mere difference from others, he must show a significant restriction.

Based on the aforementioned case law, the court looks to Plaintiff as he stands after any corrective measures, such as medication, to determine if Plaintiff was substantially limited in a major life activity. *See Sutton*, 527 U.S. at 488. Plaintiff cites to his deposition for the position that his alleged ADA disability caused him to have significant problems with memory and concentration. ( Schriner Dep. at 51.) However, upon closer examination the court notes that Plaintiff's deposition

11

testimony refers to his ADA disability before he took FMLA.  Defendant does not dispute that Plaintiff had an ADA disability prior to taking FMLA.  Defendant asserts that when Plaintiff returned to work he no longer had a disability for purposes of the ADA.  Thus, Plaintiff's deposition testimony, as cited by Plaintiff, fails to support his claim that he was significantly limited in a major life activity.

Furthermore, Plaintiff makes no argument, and there is no indication that Plaintiff's depression and PTSD was not fully treatable with medication.  The court notes that thousands, if not millions of Americans struggle with depression, anxiety, and a host of other mental illnesses; however, with the help of medication they are able to work and undertake major life activities.  Thus, the mere fact that Plaintiff suffered from depression and PTSD does not automatically mean that Plaintiff was significantly limited in a major life activity.

The facts provided to the court indicate that Plaintiff was not significantly limited in a major life activity.  Plaintiff's LSW provided Plaintiff with limited duty and full duty releases to return to work.  ( Schriner Dep. at 6; Def.'s Statement of Mat. Facts, Ex. 9.)  The full duty release was further confirmed by the LSW in a letter dated April 7, 2002.  (Def.'s Statement of Mat. Facts, Ex 8.)  Neither the April 7, 2002 letter or the full duty release contained any restrictions on Plaintiff's ability to work.[8]  (*Id.*, Exs. 8, 9.)  There is no evidence that Plaintiff made any additional requests for FMLA leave.  Moreover, twenty days after Plaintiff was terminated by Defendant, he found similar work as a sales representative with US Foods.  (Pl.'s Counterstatement of Mat.

---

[8]Additionally, during his deposition, Plaintiff's LSW stated that Plaintiff's condition was temporary.  (Lawrence Dep. at 121.)  As provided by the Third Circuit: "As a matter of law, a 'transient, nonpermanent condition,' or 'a temporary, non-chronic impairment of short duration' . . . fall short of substantially limiting an individual in a major life activity."  *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 765 (3d Cir. 2004) (internal citations omitted).

Facts ¶ 106.)  Plaintiff made no requests for US Foods to accommodate his medical condition.  (*Id.* ¶ 108.)  While Plaintiff is now receiving SSDI, this does not necessarily indicate that Plaintiff was disabled for purposes of the ADA while he was employed by Defendant.[9]  (Def.'s Statement of Mat. Facts, Ex. 10.)

The court finds that Plaintiff fails to create a genuine issue that he was significantly limited in a major life activity.  Based on the evidence presented by Plaintiff, the court finds that Plaintiff does not establish disability for purposes of the ADA under the first tier of the definition of disability.

### ii.    <u>Regarded as Disabled</u>

The conclusion that Plaintiff did not have an ADA disability under the first tier of the definition of disability does not end the inquiry as to whether Plaintiff was disabled for purposes of the ADA.  Plaintiff argues that he was disabled under the third tier of the ADA's definition of disability.  Under the third tier, individuals who are "regarded" as having a disability are disabled for purposes of the ADA.  42 U.S.C. § 12102(2).  The Supreme Court has stated that the third tier "provides that having a disability includes 'being regarded as having,' § 12102(2)(C), 'a physical or mental impairment that substantially limits one or more of the major life activities of such individual,'§ 12102(2)(A)."  *Sutton,* 527 U.S. at 489.  Moreover, *Sutton* provided:

> There are two apparent ways in which individuals may fall within this statutory definition: (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities. In both cases, it is necessary that a covered

---

[9]The Court notes that the Social Security Administration's decision to provide Plaintiff with SSDI was based not only on his depression, but also on Plaintiff's claim that he was suffering from toxic mold exposure.  (Def.'s Statement of Mat. Facts, Ex. 10.)

> entity entertain misperceptions about the individual--it must
> believe either that one has a substantially limiting impairment
> that one does not have or that one has a substantially limiting
> impairment when, in fact, the impairment is not so limiting

*Id*.

"In either case, the definition of 'substantially limits' remains the same as it does in other parts of the statute--i.e., if the individual is attempting to establish that the employer believed the individual to be limited in the life activity of 'working,' then 'working' must encompass a broad class of jobs." *Tice v. Centre Area Transp. Auth.*, 247 F.3d 506, 514 (3d Cir. 2001) (citing *Sutton*, 527 U.S. at 489-93). The EEOC defines "substantially limits" as "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 CFR § 1630.2(j)(3)(i). According to the Supreme Court, "to be regarded as substantially limited in the major life activity of working, one must be regarded as precluded from more than a particular job." *Murphy v. United Parcel Serv., Inc.*, 527 U.S. 516, 523 (1999). In sum, Plaintiff has the burden to show that Defendant mistakenly believed that Plaintiff's impairment significantly restricted his ability to preform, not only his specific job, but a class of jobs or a broad range of jobs in various classes.

Plaintiff asserts that Defendant regarded him as disabled for the following reasons: (1) it provided guidelines for Plaintiff to follow that would not have been provided to another employee, ( Schriner Dep. at 67; Tillotson Dep. at 21); (2) it subsidized Plaintiff's pay, allegedly to take pressure off of Plaintiff, ( Schriner  Dep. at 161-62); (3) it reassigned Plaintiff to a different sales area, ( Schriner Dep. at 161-62); and (4) in a correspondence between Plaintiff's supervisor and a customer, Plaintiff's

supervisor stated that "[Plaintiff] needs to know that people care about him," (Pl.'s Supp. Docs., Ex. 29).

The evidence put forward by Plaintiff does not indicate that Defendant mistakenly believed that Plaintiff's impairment significantly restricted his ability to preform his job.  At most, Plaintiff's evidence indicates that Defendant was aware that Plaintiff had an impairment.  However, the "mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate . . . that the employer regarded the employee as disabled." *Kelly v. Drexel Univ.*, 94 F.3d 102, 108-09 (3d Cir. 1996).

Put simply, just because Defendant provided Plaintiff with certain accommodations does not mean that Defendant regarded Plaintiff as being significantly limited in the life activity of working.  Plaintiff continued to work as a sales representative and continued to receive the same amount of pay, despite being given guidelines to follow and being reassigned to a different sales route.  The very fact that Defendant continued to employ Plaintiff as a sales representative creates a strong indication that Defendant did not regard Plaintiff as being significantly restricted in his ability to perform his job.  While Defendant provided Plaintiff with certain accommodations and stated that Defendant needed to know that people care about him, this is not enough to create a genuine issue that Defendant regarded Plaintiff as disabled.  The evidence is more indicative of Defendant's interest in making sure that Plaintiff could perform his job.  Moreover, the court notes that Plaintiff put forward no evidence that Defendant terminated him because it regarded his disability as precluding him from performing his job.  The fact that Plaintiff was eventually terminated from his position does not, absent some supporting evidence, indicate that Defendant regarded

him as being disabled.  Thus, the court finds that Plaintiff does not establish a genuine issue of material fact that Defendant regarded him as being disabled.

The court finds that Plaintiff fails to make a *prima facie* case for discrimination under the ADA.  Plaintiff fails to establish that he had a disability that significantly limited his ability to perform a major life activity, nor can Plaintiff establish that Defendant regarded him as disabled for purposes of the ADA.  Additionally, Plaintiff does not argue that there is a record of disability.  Thus, Plaintiff does not meet the first prong of his *prima facie* case.  As such, the court will grant Defendant's motion for summary judgment on Plaintiff's ADA claims.

## B.   Plaintiff's PHRA Claim

As provided by the Third Circuit, an "analysis of an ADA claim applies equally to a PHRA claim."  *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999).  Both Plaintiff and Defendant fully incorporate their ADA arguments into their PHRA arguments.  Based on its analysis of Plaintiff's ADA claim, the court will grant Defendant's motion for summary judgment on Plaintiff's PHRA claims.

## C.   Plaintiff's FMLA Claim

The stated purposes of the FMLA is to "balance the demands of the workplace with the needs of families" and "to entitle employees to take reasonable leave for medical reasons."  29 U.S.C. § 2601(b)(3); *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 140-41 (3d Cir. 2004).  There are two distinct causes of action under the FMLA.  First, a plaintiff may recover under an "interference" theory. *See Bearley v. Friendly Ice Cream Corp.*, 322 F. Supp. 2d 563, 570 (M.D. Pa. 2004).  Under 29 U.S.C. § 2615(a)(1), it is unlawful for an employer "to interfere with, restrain, or deny" an employee's rights under the FMLA.  Second, a plaintiff may

16

recover under a "retaliation" theory. *See id.* at 574. Under 29 U.S.C. § 2615(a)(2), it is unlawful for an employer to discriminate against an employee who has taken FMLA leave. Plaintiff asserts that Defendant interfered with his FMLA leave and retaliated against him for taking FMLA leave. The court will address Plaintiff's claims and Defendant's corresponding arguments in turn.

### i.    **Interference Claim**

Plaintiff asserts that Defendant interfered with his FMLA leave in two ways. First, Defendant failed to restore Plaintiff to the position he held before taking leave. Second, Defendant attempted to discourage Plaintiff from taking leave. The scope of what constitutes interference is provided in 29 C.F.R. § 825.220(b): "Interfering with the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave." Defendant asserts that it did not interfere with Plaintiff's FMLA leave, but rather facilitated it. For reasons stated below, the court finds Defendant's argument to be convincing.

Plaintiff's first argument, that he was not restored to his original position, fails to address a claim of interference and should be addressed under a retaliation theory.[10] Under 29 C.F.R. § 825.220(b)(2), "changing the essential functions of the job in order to preclude the taking of leave" may be considered to be interference. The operative words in § 825.220(b)(2) are "in order to preclude." Plaintiff does not argue that Defendant changed his position in order to preclude his FMLA leave. Nor does Plaintiff argue that he was told that if he took FMLA he would not be restored to

---

[10]The court notes that Plaintiff does address the failure to restore him to his original position under his claim of FMLA retaliation. The court will address Plaintiff's assertions in its discussion of Plaintiff's FMLA retaliation claims.

his original position.  The alleged failure to restore Plaintiff happened after his FMLA leave and cannot be said to have interfered with Plaintiff taking FMLA leave.  To provide otherwise would result in an inconsistent, if not wholly illogical, result.

With respect to Plaintiff's first argument, that he was discouraged from taking FMLA leave, Plaintiff asserts that one of his supervisors requested that he only take partial days off.  Plaintiff relies on his deposition in support of this assertion.  However, Plaintiff's deposition testimony does not support Plaintiff's assertions.  In his deposition, Plaintiff states that his supervisor "wanted to know if I would be able to partially continue to do my job and be able to go to therapy with my daughter and I explained to him that I couldn't."  ( Schriner Dep. at 53.)  During the deposition Plaintiff was later asked, if "it is fair to say that this was an amicable discussion to try to figure out how you could take your daughter to therapy and keep your job?"  (*Id.* at 54-55.)  Plaintiff responded that "I would probably say yeah, I mean, yeah."  (*Id.* at 55.)  The court does not find such an inquiry rises to the level of interference.  Instead, it was a valid question by an employer in an attempt to determine what type of FMLA leave would be appropriate.  There are no provisions in the FMLA prohibiting an employer from inquiring about potential arrangements for an employee to take FMLA leave.  In fact, the FMLA provides that an individual can take intermittent leave.  9 U.S.C. §2612(b).  Thus, Defendant's questions were appropriate and did not interfere with Plaintiff's FMLA leave.

Moreover, in January 2002, Plaintiff met with Defendant's Human Resource Manager to discuss the possibility of taking FMLA leave.  (Def.'s Statement of Mat. Facts ¶ 37.)  Defendant provided Plaintiff with a copy of Defendant's FMLA policy and the appropriate paperwork to complete.  (*Id.*)  Sometime in early February,

Plaintiff's FMLA request was approved by Defendant.   The court finds that Defendant did not interfere with, but rather facilitated, Plaintiff's FMLA leave. Defendant's conduct was not improper under the FMLA and cannot be construed to be interference.  As such, the court will grant Defendant's motion for summary judgment on Plaintiff's FMLA claim under an interference theory.

### ii.      Retaliation

To establish a *prima facie* case of retaliation, Plaintiff must show that: (1) he engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the protected activity; and (3) a causal link exists between the protected activity and the adverse action.  *See Weston v. Pennsylvania*, 251 F.3d 420, 430 (3d Cir. 2001).  The court notes that an individual returning from FMLA leave has no greater rights than if the employee had been continuously employed during his FMLA leave period.  29 C.F.R. § 825.216(a).

Defendant does not dispute that Plaintiff was engaged in a protected activity.  However, Defendant does dispute that there was an adverse employment action.  In the alternative, Defendant argues that even if there was an adverse employment action there is no causal link between the protected activity and the adverse action.

Plaintiff asserts that Defendant retaliated against him by: (1) reassigning Plaintiff to new accounts and transferring Plaintiff to a different sales territory; and (2) terminating Plaintiff.  Plaintiff's claims and Defendant's corresponding arguments will be addressed in turn.

### a.      Transfer of Plaintiff's Sales Territory

Plaintiff returned from FMLA leave on April 1, 2002.  When Plaintiff returned to full duty work on April 22, 2002, Defendant's agents met with Plaintiff and discussed certain guidelines regarding his employment.  These guidelines provided in specific: hours and days of work for Plaintiff, amounting to a 40-hour work week; a guarantee of salary for Plaintiff for a time period from April 22, 2002 until July 12, 2002; and a directive to Plaintiff not to discuss his personal life with his customers.

As stated, Plaintiff's pre-FMLA territory was located in the Harrisburg area with at least one account in the Lancaster area.  (*Id.* ¶ 67; Pl.'s Counterstatement of Mat. Facts ¶ 67.)  In late May or early June, Plaintiff was transferred to the Lancaster territory.  (Pl.'s Counterstatement of Mat. Facts ¶ 70.)  As part of Plaintiff's transfer to the Lancaster territory, Plaintiff maintained the High Foods account, which was his largest volume pre-FMLA account.  (Def.'s Statement of Mat. Facts ¶ 73.)  Most of Plaintiff's new accounts were located between the High Foods' account and his home.  (*Id.*, Ex. 23.)  Additionally, Defendant continued to underwrite Plaintiff's commission so that Plaintiff was not economically impacted by the change of his sales territory.

The Supreme Court has stated that "[a] tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).  "Courts have operationalized the principle that retaliatory conduct must be serious and tangible enough to alter an employee's compensation, terms, conditions or privileges of employment into the doctrinal requirement that the alleged retaliation constitute 'adverse employment action.' "  *Robinson v. City of Pittsburgh*,

120 F.3d 1286, 1300 (3d Cir. 1997).  Other circuits have also addressed what constitutes an adverse action.  In *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379 (8th Cir. 1994), the Eighth Circuit found that a employee who was transferred to a position that she considered to be more stressful failed to allege an adverse employment action.  The *Harlston* court found that the plaintiff "suffered no diminution in her title, salary, or benefits."  *Id.* at 382.  Thus, according to the *Harlston* court, "[t]his describes nothing 'more disruptive than a mere inconvenience or an alteration of job responsibilities.' "  *Id.* (quoting *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)).  Moreover, the *Harlston* court concluded that "[c]hanges in duties or working conditions that cause no materially significant disadvantage, such as [plaintiff's] reassignment, are insufficient to establish the adverse conduct required to make a *prima facie* case."  *Id.*  The Sixth Circuit has provided that "a change in employment conditions 'must be more disruptive than a mere inconvenience or an alteration of job responsibilities.' "  *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 886 (6th Cir. 1996) (quoting *Crady*, 993 F.2d at 136).

          In a case similar to the instant case, the Seventh Circuit stated that "any *involuntary* transfer, almost by definition, is likely to mean more work, and for a commissioned salesman initially less pay, for the employee who is transferred." *Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996).  However, the *Williams* court reasoned that "since commission earnings are proportional to sales, a transfer that has the effect of reducing the employee's sales and hence commissions is an unlikely candidate for discrimination, since the employer in such a case is hurting the employee by hurting itself, that is, by reducing its sales."  *Id.*  The *Williams* court

concluded "that an indirect and minor effect on commission income    . . . is not sufficient to transform a lateral transfer into a demotion." *Id.*

In the instant case, it is not disputed that Plaintiff was transferred; however, Defendant provided Plaintiff with a guaranteed compensation until July 12, 2002.  Thus, Plaintiff's salary remained unaffected.  Plaintiff's title remained the same and he retained his largest account.[11]  While Plaintiff may argue that he was not happy with the transfer, that is not enough to allege retaliation.  As provided by the Third Circuit: "[W]e do not sit as a super-personnel department that reexamines an entity's business decisions."  *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 332 (3d Cir. 1995).  The court is not in a position to remedy employment decisions that Plaintiff dislikes or that Plaintiff views as not entirely favorable to him.  The court only looks to see if there has been a violation of the applicable law.  The court finds that there has been no violation of the FMLA with respect to the reassignment of Plaintiff's sales territory.  Accordingly, the court will grant Defendant's motion for summary judgment with respect to Plaintiff's claim that Defendant retaliated against him for taking FMLA leave by reassigning his sales territory.

### b.    Plaintiff's Termination

With respect to Plaintiff's termination, Defendant asserts that there is no nexus between Plaintiff's termination and his FMLA leave.[12]  According to Defendant,

---

[11]Plaintiff alleges that the transfer of Plaintiff to a different sales territory was essentially downgrading Plaintiff to the position of trainee.  (Pl.'s Br. Opp'n Def.'s Mot. for Summ. J. at 11;  Schriner Dep. at 182.)  However, Plaintiff does not provide any evidence to support his contention other than his own opinion.  Nor is there any evidence that Plaintiff's title or that his primary duties changed.

[12]Defendant also asserts that Plaintiff was terminated for continuing to discuss his personal life with his customers.  Defendant asserts that it received numerous complaints from customers both before and after

(continued...)

22

Plaintiff's claim lacks temporal proximity.  "We have recognized, to be sure, that a suggestive temporal proximity between the protected activity and the alleged retaliatory action can be probative of causation."  *Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003).  The Third Circuit has provided that "circumstantial evidence of a 'pattern of antagonism' following the protected conduct can also give rise to the inference."  *Kachmar v. SunGard Data Sys., Inc*., 109 F.3d 173, 177 (3d Cir. 1997) (citation omitted); *see also Thoma*s, 351 F.3d at 114 ("[W]here 'the temporal proximity is not so close as to be unduly suggestive,' we have recognized that 'timing plus other evidence may be an appropriate test . . . .' ")  (quoting *Estate of Smith v. Marasco*, 318 F.3d 497, 513 (3d Cir. 2003)) (internal quotation marks omitted).

        With respect to temporal proximity, the Supreme Court has stated that "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment as sufficient evidence of causality to establish a *prima facie* case uniformly hold that the temporal proximity must be 'very close[].' "  *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001).  While the Third Circuit has not prescribed a specific time range to establish temporal proximity, *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 760 (3d Cir. 2004) provided that two months without any other evidence to suggest discrimination was insufficient to establish temporal proximity in an ADA case.  *See also Richmond v. ONEOK, Inc*., 120 F.3d 205, 209 (10th Cir. 1997) (three month period insufficient); *Hughes v. Derwinski*, 967 F.2d 1168, 1174-75 (7th Cir. 1992) (four month period insufficient); *Cooper v. City of North Olmsted*, 795 F.2d 1265, 1272 (6th Cir. 1986)

---

[12](...continued)
Plaintiff took his FMLA leave.  As stated, Defendant fails to provide any affidavits or other admissible evidence to support this assertion.  Thus, these arguments will not be considered by the court.

(discharge four months after filing of discrimination charge not causally linked to adverse employer action); *Harley v. McCoach*, 928 F. Supp. 533, 542 (E.D. Pa. 1996) ("[I]f at least four months pass after the protected action without employer reprisal, no inference of causation is created.").

In the instant case, Plaintiff returned from FMLA on April 22, 2002 and was terminated on August 6, 2002. Approximately four months passed between Plaintiff's protected activity and the allegedly adverse employment action. Based on the aforementioned case law, the court finds that this is not in and of itself enough to establish temporal proximity. As provided by the Third Circuit:

> It is important to emphasize that it is causation, not temporal proximity itself, that is an element of plaintiff's *prima facie* case, and temporal proximity merely provides an evidentiary basis from which an inference can be drawn. The element of causation, which necessarily involves an inquiry into the motives of an employer, is highly context-specific. When there may be valid reasons why the adverse employment action was not taken immediately, the absence of immediacy between the cause and effect does not disprove causation.

*Kachmar*, 109 F.3d at 178.

Thus, the court must look to see if there was any pattern of adverse employment actions sufficient enough to provide an inference that Plaintiff was terminated in retaliation for taking FMLA leave. Plaintiff asserts that the reassignment of his sales area is enough to create such an inference. The court disagrees. As stated, the reassignment of Plaintiff was not a hostile employment action.

While Plaintiff was assigned to a different sales route, the court has found that this does not qualify as an adverse employment action. *See supra* at 20-23. Plaintiff does not provide any evidence of any other alleged pattern of antagonism.

Thus, the court does not find that a pattern of antagonism existed.  Plaintiff fails to create an inference that Defendant retaliated against him for taking FMLA leave.

In light of the lack of temporal proximity between the date of Plaintiff's FMLA leave and his termination and the failure of Plaintiff to establish a genuine issue that a continuing pattern of hostility or antagonism existed, the court finds that Plaintiff fails to make his *prima facie* case for FMLA retaliation.  As such, the court finds that Defendant did not retaliate against Plaintiff for taking FMLA leave and will grant Defendant's motion for summary judgment with respect to this issue.[13]

## IV.         <u>Conclusion</u>

In accordance with the foregoing discussion, the court will grant Defendant's summary judgment motion.  The court finds that Plaintiff has failed to make a *prima facie* case for disability under the ADA and the PHRA.  The court finds that Plaintiff fails to establish that Defendant interfered with his FMLA leave.  The court finds that Plaintiff fails to make a *prima facie* case for FMLA retaliation.  Because the court will grant Defendant's motion on these grounds, the court need not address Defendant's argument that Plaintiff's claims fail for lack of damages.  An appropriate order will issue.

s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated:  June 23, 2005.

_____

[13]Defendant also argues that Plaintiff was terminated for insubordination for failure to attend a training meeting and failure to follow a directive to check his voice mail on an hourly basis.  Because the court finds that Plaintiff has failed to establish a nexus between his termination and his FMLA leave the court need not address Defendant's additional arguments.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**MICHAEL A. SCHRINER,**          :          CIVIL NO. 1:CV-03-2122
                                          :
       **Plaintiff**          :
                                          :
    **v.**          :
                                          :
**SYSCO FOOD SERVICE OF**          :
**CENTRAL PENNSYLVANIA,**          :
                                          :
    **Defendant**          :


## ORDER

In accordance with the accompanying memorandum of law, **IT IS
HEREBY ORDERED THAT**:

    1)  Defendant's motion for summary judgement is **GRANTED**.

    2)  The Clerk of Court shall enter judgment in favor of Defendant and
against Plaintiff and close the case file.


                            s/Sylvia H. Rambo
                            SYLVIA H. RAMBO
                            United States District Judge

Dated:  June 23, 2005.